**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>    Plaintiff,<br><br>    v.<br><br>**ANY AND ALL FUNDS ON DEPOSIT IN ACCOUNT NUMBER 40187-22751518 AT HSBC BANK PLC, 55 CORPORATION STREET, COVENTRY, UNITED KINGDOM, HELD IN THE NAME OF JITTISOPA SIRIWAN, AND ANY PROPERTY TRACEABLE THERETO, et al.,**<br><br>    Defendants.<br><br>**JITTISOPA SIRIWAN,**<br><br>    Claimant. | Case No. 13-cv-00195 (CRC) |

**MEMORANDUM OPINION AND ORDER**

   The government has brought this civil asset forfeiture proceeding against funds in seven bank accounts that it alleges are the proceeds of an illegal scheme to bribe the former tourism minister of Thailand, Ms. Juthamas Siriwan. The bank accounts are in the name of the minister's daughter, Jittisopa Siriwan, a Thai native who has never lived in the United States. Jittisopa Siriwan has filed a claim against the funds and moved to stay proceedings in this case pending the outcome of a related federal criminal case against her and her mother in the Central District of California. The government has cross-moved to strike her claim, contending she lacks standing as a mere "straw owner" of the funds and that her claims are barred by the fugitive disentitlement doctrine. Because the government acknowledges that Jittisopa Siriwan has exercised control over at least one of the accounts by withdrawing funds for her personal use, the Court determines that

she has standing to contest the forfeiture. And because the government has not established on this record that Siriwan is seeking to avoid prosecution by declining to enter the United States, the Court finds that the fugitive disentitlement doctrine does not apply. Accordingly, the Court will stay these proceedings pending the outcome of the related criminal case against Siriwan.

**I.     Background**

The government's Verified Complaint alleges that two U.S. citizens, Gerald and Patricia Green, bribed Juthamas Siriwan, the former Governor of the Tourism Authority of Thailand, in order to obtain contracts to manage the Bangkok International Film Festival and perform other services for the Thai government. Verified Compl. ¶ 2. The complaint claims that the bribery payments were sent to bank accounts located in the United Kingdom, Singapore, and Switzerland and held in the name of Juthamas' daughter, Jittisopa Siriwan. Id. ¶¶ 155–71. The Greens have been found guilty of conspiracy and Foreign Corrupt Practice Act violations in relation to the scheme. United States v. Green, No. 8-cr-59, Amended Judgment (C.D. Cal. Sep. 10, 2010). The Siriwans were indicted in the District Court for the Central District of California and the government made an extradition request, which remains pending. See United States v. Siriwan, No. 9-cr-81, Def.'s Mot. (C.D. Cal. May 30, 2011). The Siriwans moved for leave to make a special appearance solely for the purpose of moving to dismiss the indictment, which the court granted. Id. They then moved to dismiss the indictment, but consideration of that motion has been stayed pending a possible indictment of the pair in Thailand. Id., Joint Status Report (C.D. Cal. Nov. 19, 2014).

The government filed suit in this case, executed warrants *in rem* against the bank accounts, and moved to unseal the complaint in October 2013. Order granting Mot. to Unseal Case, Oct. 21, 2013. After receiving notice of this forfeiture proceeding from the government, Jittisopa Siriwan filed a claim to the funds. The government moved to strike, contending that she had missed the

deadline provided in Supplemental Rule for Admiralty and Maritime Claims and Asset Forfeiture Actions ("Supplemental Rule") G(5).  The Court, however, determined that Siriwan's claim was timely and, alternatively, that the deadline to file should be extended.  Mem. Opinion and Order, Dec. 11, 2014.  Siriwan thereafter filed an answer and has moved to stay these proceedings pending the outcome of the ongoing U.S. criminal case.  The government opposes the motion and has moved to strike Siriwan's answer for lack of standing or, alternatively, to dismiss the claim and answer under the fugitive disentitlement doctrine, which bars fugitives of criminal prosecution from contesting related civil forfeitures.

**II.     Analysis**

A.  Standing

The government contends that Jittisopa Siriwan is the "mere nominal holder" of the bank accounts and thus lacks standing to contest the forfeiture because she would not in fact be injured by the loss of the monies.  A civil forfeiture claimant's standing "'turns upon whether the claimant has a sufficient interest in the property to create a case or controversy.'"  United States v. 8 Gilcrease Lane, Quincy Florida 32351, 641 F. Supp. 2d 1, 6 (D.D.C. 2009) (quoting United States v. Real Property Located at 5208 Los Franciscos Way, 385 F.3d 1187, 1191 (9th Cir. 2004)).

The bank accounts that are the subject of this forfeiture action are in Jittisopa Siriwan's name.  "[A]n owner of property seized in a forfeiture action will normally have standing to challenge the forfeiture."  United States v. Cambio Exacto, S.A., 166 F.3d 522, 527 (2d Cir. 1999) (citing Torres v. $36,256.80 U.S. Currency, 25 F.3d 1154, 1157 (2d Cir. 1994)).  But "'[p]ossession of mere legal title by one who does not exercise dominion and control over the property is insufficient even to establish standing to challenge a forfeiture.'"  United States v. One Parcel of Land, Known as Lot 111-B, Tax Map Key 4-4-03-71(4), Waipouli, Kapaa, Island & Cnty. of Kauai, State of Hawaii, 902 F.2d 1443, 1444 (9th Cir. 1990) (quoting United States v. A Single Family

Residence, 803 F.2d 625, 630 (11th Cir. 1986)).  At the initial stages of a case, once the government has alleged that the claimant is a mere straw owner, the claimant must establish "a facially colorable interest in the proceedings."  United States v. $38,570 U.S. Currency, 950 F.2d 1108, 1112 (5th Cir. 1992); accord United States v. $557,933.89, More or Less, in U.S. Funds, 287 F.3d 66, (2d Cir. 2002).  In this inquiry, courts generally consider "indicia of dominion and control such as possession, title, and financial stake."  United States v. $38,570 U.S. Currency, 950 F.2d 1108, 1113 (5th Cir. 1992) (citing U.S. v. One 1981 Datsun 280ZX, 563 F. Supp. 470, 474 (E.D. Pa. 1983)); accord United States v. All Assets Held at Bank Julius Baer & Co., 772 F. Supp. 2d 191, 198 (D.D.C. 2011) (claimant must be able to show "'a colorable interest in the property, for example, by [alleging] actual possession, control, title, or financial stake.'" (quoting United States v. 475 Martin Lane, 545 F.3d 1134, 1140 (9th Cir. 2008) (alteration in original)).

The government alleges in its Verified Complaint that Jittisopa Siriwan simply held title to the bank accounts, while the funds in the accounts were transferred by Gerald and Patricia Green for the benefit of Juthamas Siriwan.  Verified Compl. ¶ 4.  The Verified Complaint also alleges, however, that Jittisopa Siriwan "'regularly transferred funds from' the United Kingdom account to her personal account 'when a tuition check or credit card payment came due or when the balance in that account was diminished.'"  Gov. Mot. to Strike at 13 (quoting Verified Compl. ¶ 100).  The government contends that these allegations, taken as true, are insufficient to establish Jittisopa's standing because she may have made these withdrawals with her mother's permission, and there is no evidence that she "had physical possession of the statements, checkbook, or other bank documents related to this account."  Id.

As demonstrated by prior cases, the bar to establish standing at the initial stages of a civil forfeiture proceeding is low.  In United States v. $81,000, for example the First Circuit held that Whitey Bulger's brother, John, had standing to contest the forfeiture of funds in a bank account to

which he was a co-signatory. 189 F.3d 28, 37 (1st Cir. 1999). Although John acknowledged that Whitey opened the account without consulting John and that only Whitey's funds were ever put into the account, the court held that John exercised sufficient control over the funds because he received bank statements, had the checkbook for the account, and withdrew or transferred money from the account. Id. at 36–38. And in $38,570 U.S. Currency, the Fifth Circuit held that a claimant pled sufficient facts to establish standing where the government had seized funds from a passenger in the claimant's car and the claimant merely asserted that he owned the money. 950 F.2d at 1113. By contrast, in United States v. Contents of Accounts Numbers 3034504504 & 144-07143 at Merrill Lynch, Pierce, Fenner & Smith, the Third Circuit held that a company that owned the subject accounts lacked standing where the government alleged that the company was a straw holder for a money launderer who exclusively used the accounts and the company presented no evidence that any other individual was involved in the company or that it engaged in any business. 971 F.2d 974, 976 (3d Cir. 1992).

Under the facts acknowledged by the government, Siriwan has standing to contest this civil forfeiture, at least at the initial stages. Legal title is significant evidence of an individual's interest in contested property. Cambio Exacto, S.A., 166 F.3d at 527. And Siriwan's personal use of the funds is a sufficient indicia of her control over the property to dispute that she is merely a nominal owner. See $81,000, 189 F.3d at 37. The government's contentions that Siriwan may have withdrawn funds to pay for her own expenses only with the permission of her mother is speculative. And in any event, forfeiture would injure Siriwan regardless of whether her mother gave permission to use the funds because she would be deprived of their benefit. See Cambio Exacto, S.A., 166

F.3d at 528 ("Substantial economic harm is plainly the type of injury for which parties may seek redress in federal court.").[1]

### B. Fugitive Disentitlement Doctrine

As an alternative basis to strike the claim, the government contends that Siriwan is subject to the fugitive disentitlement doctrine. Under that doctrine, a court may disallow a party to pursue a claim against property that is the subject of a civil asset forfeiture proceeding upon a finding that the party, "in order to avoid criminal prosecution—(A) purposely leaves the jurisdiction of the United States; (B) declines to enter or reenter the United States to submit to its jurisdiction; or (C) otherwise evades the jurisdiction of the court in which a criminal case is pending against the person[.]" 28 U.S.C. § 2466(a)(1).

The government maintains that Siriwan is deliberately avoiding prosecution by declining to enter or reenter the United States to submit to its jurisdiction. Courts review whether a claimant is a fugitive under Section 2466 under "a totality of the circumstances" and "may consider matters outside the pleadings." United States v. $6,976,934.65 Plus Interest, 478 F. Supp. 2d 30, 41 (D.D.C. 2007). As the government recognizes, "mere notice or knowledge of an outstanding warrant, coupled with a refusal to enter the United States, does not satisfy the statute." United States v. $6,976,934.65, Plus Interest Deposited into Royal Bank of Scotland Int'l, Account No. 2029-56141070, Held in Name of Soulbury Ltd. ("$6,976,934.65"), 554 F.3d 123, 132 (D.C. Cir. 2009). Rather, the alleged fugitive must have "'declined to enter or reenter' the country *in order to*

---

[1] The government alternatively requests that the Court permit the government to conduct discovery to ascertain Siriwan's standing by deposing her. It relies on United States v. All Funds on Deposit at Citigroup Smith Barney Account No. 600-00338, but in that case the court ordered discovery when the claimant had failed to establish sufficient facts to demonstrate standing at the motion to dismiss stage. 617 F. Supp. 2d 103, 118–19 (E.D.N.Y. 2007). Here, as explained above, Jittisopa has sufficiently established her standing at this stage of the litigation, and thus jurisdictional discovery is not warranted.

avoid prosecution." Id. (quoting 28 U.S.C. § 2466) (emphasis added); accord United States v. $1,231,349.68, 227 F. Supp. 2d 130, 132 (D.D.C. 2002) (applying fugitive disentitlement doctrine where claimant fled the U.S. just days after the execution of a search warrant at his home).

Siriwan is a Thai native who has never lived in the United States and was outside the country when the indictment was issued. The government nevertheless contends that the fugitive disentitlement doctrine applies to Siriwan because she moved to specially appear in the criminal case, contested extradition, and has moved to stay this case. The government thus seeks to cast Siriwan as a fugitive largely because of her defense counsel's filings in the criminal proceeding and counsel's filings in this case. This effort strays afield from the purposes of the fugitive disentitlement doctrine. Siriwan has not disregarded the indictment against her; she was legally entitled to request permission to enter a special appearance, and indeed the court granted that request, finding that the fugitive disentitlement doctrine did not apply to her. United States v. Siriwan, No. 9-cr-81, Tentative Ruling (C.D. Cal. July 28, 2011) ("As Defendants argue, it is somewhat hard to understand why the Court should even conclude that they fall within the *fugitive* disentitlement doctrine. They are not United States citizens or residents. Nor did they leave this country post-indictment. . . . [T]hey have no demonstrated reason to otherwise continue coming to this nation." (emphasis in original)). Although the Central District of California made its determination several years ago, it has not subsequently changed its findings. Nor has Siriwan been made a fugitive by opposing the government's request for extradition in the criminal case or requesting a stay in this case. She has a legal right to do both.

The government also contends that Siriwan is a fugitive because she has visited the United States at least once, yet now refuses to return. But as already stated, mere refusal to reenter the country does not trigger the doctrine. $6,976,934.65, 554 F.3d at 132. Without demonstrating that Siriwan had intended to return to the United States before she learned of the indictment, the mere

7

fact that she has been to this country in the past does not establish that she is refusing to return in order to escape criminal liability. Under these circumstances, the Court determines that the fugitive disentitlement doctrine is inapplicable.

### C. Stay

Having determined that Jittisopa Siriwan is entitled to maintain her claim at this stage of the litigation, the Court must determine whether further proceedings must be stayed in light of the ongoing criminal case. Pursuant to 28 U.S.C. § 981(g)(2),

> [u]pon the motion of a claimant, the court shall stay the civil forfeiture proceeding with respect to that claimant if the court determines that—(A) the claimant is the subject of a related criminal investigation or case; (B) the claimant has standing to assert a claim in the civil forfeiture proceeding; and (C) continuation of the forfeiture proceeding will burden the right of the claimant against self-incrimination in the related Investigation or case.

The parties do not dispute that the Central District of California case is substantially related to this forfeiture proceeding, or that continuation of the proceeding will burden the right of the claimant against self-incrimination. Accordingly, because the Court has determined that Siriwan has standing, it will grant her motion to stay proceedings.

### III. Conclusion

For the forgoing reasons it is hereby

**ORDERED** that [30] Claimant's motion to Stay is GRANTED. It is further

**ORDERED** that [32] the government's Motion to Strike is DENIED. It is further

**ORDERED** that this matter is STAYED for a period of 180 days. The parties shall promptly notify the Court of any substantial change in circumstances in either this cause of action or the related criminal matter. And it is further

**ORDERED** that the parties shall file a joint status report on or before October 6, 2015.

**SO ORDERED.**

                                                 CHRISTOPHER R. COOPER
                                                 United States District Judge

Date:   April 6, 2015